ROBERT R. RIGGS (SBN 107684)
STEPHEN G. PREONAS (SBN 245334)
Katzoff & Riggs LLP
1500 Park Avenue, Suite 300
Emeryville, CA 94608
Tel. (510) 597-1990
email: rriggs@katzoffriggs.com

Attorneys for Plaintiffs KAREN RIGSBY,
Trustee, and DONALD P. STEINMEYER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| KAREN RIGSBY, Trustee of the MARSH REVOCABLE TRUST OF 2003, and DONALD P. STEINMEYER, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>INTERCARE SPECIALITY RISK INSURANCE SERVICES, INC, a California Corporation; ISR HOLDINGS, INC., a California Corporation; KEVIN HAMM, an individual; and PATRIOT NATIONAL, INC., a Florida Corporation.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT, ALTER EGO LIABILITY, INTENTIONAL INTERFERENCE WITH CONTRACT, AND FRAUDULENT TRANSFER OF ASSETS**<br><br>JURY TRIAL DEMANDED |

Plaintiffs KAREN RIGSBY, as Trustee of the Marsh Revocable Trust of 2003 ("Plaintiff Rigsby"), and DONALD P. STEINMEYER ("Plaintiff Steinmeyer") for their Complaint herein, allege as follows:

# JURISDICTION

1. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332 beause:

a. Plaintiff Steinmeyer is a Nevada citizen and a resident of Washoe County, who is in his eighties;

b. Plaintiff Rigsby is the sole trustee of the Marsh Revocable Trust of 2003 ("Trust"). Trust is the successor in interest to Gene Marsh and in consequence, Plaintiff Rigsby as sole successor trustee of Trust has standing to bring this suit. Gene Marsh died in February of 2016. Plaintiff Rigsby is a New Hampshire citizen, and the Marsh Revocable Trust is domiciled in New Hampshire;

c. Defendant Intercare Specialty Risk Insurance Services, Inc. ("Intercare") is a California Corporation.

d. Defendant ISR Holdings, Inc. ("ISR") is a California Corporation. Plaintiffs are informed and believe and theron allege that ISR is a mere continuation and successor in interest of Intercare, by virtue of a corporate name change. Defendants Intercare and ISR are hereafter referred to collectively as "the Intercare Defendants".

e. Defendant Kevin Hamm is a California resident.

f. Defendant Patriot National, Inc. ("Patriot") is a Delaware Corporation with its principal place of business in the City of Fort Lauderdale, County of Broward, State of Florida.

KATZOFF & RIGGS LLP
1500 PARK AVE., SUITE 300
EMERYVILLE, CA 94608
(510) 597-1990

g. All defendants have significant contacts with the State of California ("the State"). The defendants entered into transactions with other persons and entities involved in this case in the State, and engaged in conduct that involved reasonably foreseeable contacts and effects in the State;

h. The Intercare Defendants are formed under California law, have their principal place of business in California and have office in and conduct significant business within the County of Placer;

i. The amount in controversy exceeds $75,000 exclusive of interest and costs.

## VENUE

2. The Intercare Defendants are a California Corporation with their principal place of business in the City of Roseville, County of Placer, State of California, within this district.

3. Defendant Hamm, is a California resident residing in the City of Roseville, County of Placer, State of California, within this district.

4. All defendants caused injury to plaintiffs within this district.

5. This action involves contracts entered into within this district.

6. This action involves breaches of a contract providing for venue in this district that occurred within this district.

**COMPLAINT FOR BREACH OF CONTRACT, ALTER EGO LIABILITY, INTENTIONAL INTERFERENCE WITH CONTRACT, AND FRAUDULENT TRANSFER OF ASSETS**

**SUMMARY OF ACTION**

7. This case is about a breach of contract to make a total of $2,130,000 in payments to Gene Marsh and Plaintiff Steinmeyer pursuant to a December 31, 2010 asset purchase agreement ("the APA") in which plaintiffs agreed to sell certain business assets ("the Assets") of the insurance brokerage firm in which plaintiffs had an interest, named PRM Insurance Services, Inc. ("PRM") to defendant Intercare. Under the APA, Intercare was required to make monthly payments of $12,250 to Plaintiff Rigsby's predecessor in interest Gene Marsh and $5,500 to Plaintiff Steinmeyer to be received over a period of 10 years ("the Payments"). A true and correct copy of the APA is attached as Exhibit A and is incorporated herein by this reference.

8. Subject to certain adjustments that were mutually agreed to by Gene Marsh and Plaintiff Steinmeyer and by the Intercare Defendants, the Intercare Defendants made the payments to Gene Marsh and to Plaintiff Steinmeyer that were required by the APA until July 1, 2015.

9. After entering into the APA, and without permission or disclosure to Gene Marsh or Plaintiff Steinmeyer, the Intercare Defendants transferred the Assets to defendant Patriot. Under the APA, the Intercare Defendants have a duty to disclose and obtain the consent of plaintiffs to resell the Assets, as the Assets were intended to provide the sources of funds from which the Intercare Defendants would satisfy their obligations to make the Payments required under the APA. The Intercare Defendants failed to disclose these facts to plaintiffs and proceeded with the sale of the Assets to Patriot.

10. Despite demand for payment, the Intercare Defendants breached the APA

on and after July 1, 2015 by failing to make the payments due Gene Marsh, and later following Gene Marsh's death, to Plaintiff Rigsby, and to Plaintiff Steinmeyer under the APA. During the period of July 1, 2015 to September 2016, the Intercare Defendants made payments which were less than the payments required under the APA. As of October 1, 2016, the Intercare Defendants have ceased making any further payments to Plaintiff Rigsby and Plaintiff Steinmeyer and have repudiated the APA with respect to their obligation to make any further payments to plaintiffs.

11. At all times relevant to this Complaint, defendants Intercare, ISR, Hamm, and Patriot (all collectively "Defendants") were the agents, servants, and/or alter egos of each other, and were acting within the course, scope and authority of each other. Plaintiffs further allege that each Defendant was the agent of, and provided assistance to, each other Defendant in connection with the unlawful conduct alleged herein, and that each Defendant ratified or agreed to accept the benefits of the conduct of such other Defendant.

12. Plaintiffs are informed and believe that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between the Intercare Defendants and Hamm, such that any individuality and separateness between the Intercare Defendants and Hamm has ceased, and that the Intercare Defendants and Hamm are the alter ego of one another in that (1) the Intercare Defendants and Hamm exercised complete control and dominance of one another to such an extent that any individual or separateness of the Intercare Defendants and Hamm no longer exists; (2) the Intercare Defendants and Hamm used or promised to use assets of one another for their personal uses, and used personal assets as the assets of the Intercare Defendants and Hamm,

commingling the assets of the Intercare Defendants and Hamm and to the extent that they are no longer distinct; and (3) the activities and business of the Intercare Defendants and Hamm were carried out without preserving corporate formalities.

13. Adherence to the fiction of the separate existence of the Intercare Defendants and Hamm as an entities and persons distinct from one another would permit an abuse of the corporate privilege and would sanction fraud and promote injustice in that the Intercare Defendants and Hamm could avoid liability for the negligence, contracts, liabilities and obligations undertaken by one another as alleged in this complaint.

**GENERAL ALLEGATIONS**

14. PRM was previously an insurance brokerage firm which placed and managed wholesale and retail insurance contracts, primarily in workers compensation and healthcare. Plaintiff Steinmeyer and Gene Marsh are the former executives and shareholders of PRM.

15. Defendant Hamm was hired to be general manager of PRM in 2007, with full authority to manage the company. He was known to Marsh and had worked for him in the industry previously with excellent success. Under Hamm's management, PRM's business grew at a substantial rate.

16. In 2009 Hamm offered to purchase the Assets of PRM, on behalf of his company, Intercare. As of that date, Hamm was the CEO of Intercare. Gene Marsh agreed to the sale due to his advanced age and desire to retire. To facilitate the sale, Plaintiff Steinmeyer agreed to sell his interest as well.

17. The negotiations concluded with the parties entering into the APA on

December 31, 2010.  Under the APA Intercare purchased the Assets of PRM in exchange for, *inter alia*, fixed payments of $12,250 per month for 10 years to Gene Marsh and fixed payments of $5,500 per month for 10 years to Plaintiff Steinmeyer starting in January, 2011 and ending in December, 2020.

18. Under the APA the rights of Gene Marsh and Plaintiff Steinmeyer pass to their heirs, executors, administrators, successors and assigns for the full ten-year term of the APA.  As a result, Plaintiff Rigsby now holds all rights previously belonging to Gene Marsh under the APA.  Plaintiff Rigsby and her predecessor in interest Gene Marsh are thus herein collectively referred to as "Plaintiff Rigsby."  Likewise, the obligations of Intercare pass to its successors and assigns during the same period.

19. Plaintiffs are informed and believe and thereon allege that in or about 2011 ISR became the successor in interest to Intercare and that Hamm was also the CEO of ISR, as he was with Intercare.

20. Plaintiffs are informed and believe and thereon allege that beginning in 2015 the Intercare Defendants and Hamm made efforts to sell the rights of the Intercare Defendants to the Assets under the APA to a third party without the consent of Gene Marsh and Plaintiff Steinmeyer.  Specifically as a product of those efforts, at a time prior to July 1, 2015, defendant Patriot, an insurer based in Florida, conducted an "audit" of the APA ('the Patriot Audit") prior to making an offer to purchase the Assets.

21. Plaintiffs are informed and believe, and thereon allege, that subsequent to the Patriot Audit, without notice to or approval by plaintiffs, the Intercare Defendants then sold some or all of the Assets to Patriot, without Patriot assuming any of the liabilities

connected to the Assets, namely, the payment obligations to plaintiffs (the "Patriot Asset Sale"). This undisclosed sale of the Assets to Patriot without notice to plaintiffs and without Patriot assuming the liability of the payments due under the APA, destroyed the security built into the APA that guaranteed timely performance of the payment provisions of the APA. As a result, the Intercare Defendants breached the APA on and after July 1, 2015, as alleged herein.

22. Under the APA, the Assets were intended to secure the Intercare Defendants' timely performance of their payment obligations to plaintiffs under the APA. At the time of the execution of the APA the value of the Assets ($2,130,000) was used to calculate the total aggregate payments due from Intercare under the 10 year term of the APA. By selling some or all of the Assets to Patriot without also transferring the liability for the payments under the APA, the Intercare Defendants virtually assured that they would be unable to further perform their obligations under the APA. As a result, the Intercare Defendants breached the APA on and after July 1, 2015, as alleged herein.

23. Plaintiffs are informed and believe and thereon allege that in connection with the Patriot Audit, Patriot informed the Intercare Defendants that the Assets were not as valuable as when used originally to calculate the payments under the APA. Plaintiffs are informed and believe and thereon allege that Patriot so informed the Intercare Defendants in order to induce the Intercare Defendants to stop making payments to plaintiffs in accordance with the terms of the APA and in breach of the APA.

24. Paragraph 17 of the APA prohibits such transfer of the Assets without the consent of all parties. It states that:

This Agreement may not be assigned by any party hereto without the express written consent of the other parties hereto; provided, however, Intercare may assign its rights and obligations under this Agreement to any entity under common control with Intercare. Subject to the preceding sentence, this Agreement shall inure to the benefit of and be enforceable by the Parties hereto, their respective heirs, executors, administrators, successors and assigns.

25. Paragraph 12(c) of the APA also prohibits such transfer of the Assets stating that the Intercare Defendants and Hamm would act in good faith and take no action to assign or transfer the Assets they received to the detriment of plaintiffs:

Good Faith. Intercare, by and through its President, Kevin Hamm, represents that neither Intercare nor Hamm will take any action to assign or otherwise transfer its assets or liabilities in a manner that would decrease the value of the rights of PRM, Marsh or Steinmeyer under this Agreement.

26. Plaintiffs are informed and believe and thereon allege that the Intercare Defendants failed to allocate, transfer or otherwise preserve all or a portion of the proceeds of that sale of the Assets to Patriot into a fund or account to ensure that the Intercare Defendants could make the remaining payments due under the APA.

27. Additionally, the Intercare Defendants have breached Paragraph 12.d of the APA, which states that:

during the term of obligations created by Intercare to PRM and the term of the Consulting Agreements . . . at its sole cost and expense, obtain and maintain a life insurance policy on the life of Kevin Hamm in an amount sufficient to pay the remaining unpaid balances off all Intercare obligations payable to PRM and pursuant to the Marsh and Steinmeyer Consulting Agreements. Intercare agrees to provide proof of such valid coverage upon request of PRM, Marsh, Steinmeyer or their designees.

28. Pursuant to this provision Plaintiffs have requested proof of Key Man Insurance on Hamm. To date, the Intercare Defendants have failed to produce proof or even and offer of proof of the existence of such Key Man Insurance on Hamm.

COMPLAINT FOR BREACH OF CONTRACT, ALTER EGO LIABILITY, INTENTIONAL INTERFERENCE WITH CONTRACT, AND FRAUDULENT TRANSFER OF ASSETS

29. Beginning in July of 2015 Intercare and ISR breached the APA by failing to make the required payments to plaintiffs as alleged in paragraph 10 above.

## FIRST CLAIM FOR RELIEF
### Breach of the APA
### (Against the Intercare Defendants)

30. Plaintiffs incorporate by reference as though fully set forth herein the allegations in Paragraphs 1 through 29 of this Complaint.

31. The Intercare Defendants have breached the APA by: (a) failing to pay plaintiffs the sums due plaintiffs under the APA; (b) transferring the Assets to Patriot without the consent of plaintiffs; and (c) failing to maintain Key Man insurance on Hamm.

32. The Intercare Defendants have repudiated their obligations to plaintiffs under the APA.

33. As a direct and foreseeable result of the Intercare Defendants' breaches of the APA, plaintiffs have sustained damages. Plaintiff Rigsby has sustained damages in the sum of $683,500 or other amount according to proof that is within the jurisdiction of this Court. Plaintiff Steinmeyer has sustained damages in the sum of $278,000 or other amount according to proof that is within the jurisdiction of this Court.

34. Plaintiffs have expended reasonable litigation costs and fees to procure payment of amounts owed to plaintiffs from the Intercare Defendants under the APA.

35. Paragraph 23 of the APA states that:

In the event of an action at law or in equity between the parties hereto to enforce any of the provisions hereof, the unsuccessful party to such litigation or proceeding shall pay to the successful party all costs and expenses, including reasonable attorneys' fees, incurred therein by such successful party on trial and appeal as adjudged by the court, and if such

successful party or parties shall recover judgment in any such action or proceeding, such costs, expenses and attorneys' fees may be included as part of such judgment.

WHEREFORE plaintiffs pray for relief as requested below.

## SECOND CLAIM FOR RELIEF
(Alter Ego Liability)
Against the Intercare Defendants and Hamm

36. Plaintiffs incorporate by reference as though fully set forth herein the allegations in Paragraphs 1 through 35 of this Complaint.

37. Plaintiffs are informed and believe, and thereon allege, that the Intercare Defendants, were, at all times herein mentioned, so influenced, governed, and controlled by Hamm, and there is such a unity of interest and ownership between the Intercare Defendants and Hamm, that the separateness of the Intercare Defendants and Hamm did not exist, or ceased to exist, if it ever existed. The Intercare Defendants were created and/or maintained primarily for the purpose of defrauding the creditors of each other and Hamm, including plaintiffs. The Intercare Defendants were, and continue to be, undercapitalized and unable to meets their debts, including the obligations owed to plaintiffs under the APA. Hamm used the assets of the Intercare Defendants as his personal assets, and caused the assets of the Intercare Defendants to be used for his personal uses. Also, the Intercare Defendants and Hamm used their personal assets as the assets of one another. The Intercare Defendants and Hamm commingled their assets to the extent that they were no longer distinct. The activities and business of the Intercare Defendants were carried out without preserving corporate formalities.

38. The adherence to the fiction that the Intercare Defendants and Hamm are

separate independent legal entities that exist independently of each other, would, under these circumstances, permit an abuse of the corporate privilege and would sanction fraud and promote injustice because it would allow the Intercare Defendants and Hamm to avoid liability by hiding behind the alleged corporate form whereby the Intercare Defendants and Hamm are all legally responsible for the actions and liability alleged herein.

39.  As a result, plaintiffs here seek to pierce the corporate veil and recover from Hamm the entire amount of the debt of the Intercare Defendants at issue here, which is at least $961,500.00 plus interest and attorneys' fees and other costs.

WHEREFORE, plaintiffs pray for relief as set forth below.

### THIRD CLAIM FOR RELIEF
(Intentional Interference With Contract)
Against Patriot

40.  Plaintiffs incorporate by reference as though fully set forth herein the allegations in Paragraphs 1 through 39 of this Complaint.

41.  There was a contract, the APA, between plaintiffs and the Intercare Defendants.

42.  Patriot knew of the contract between the Intercare Defendants and plaintiffs.

43.  Patriot's conduct prevented performance by the Intercare Defendants or made performance by the Intercare Defendants more expensive or difficult.

44.  Patriot intended to disrupt the performance of the APA or knew that disruption of performance was certain or substantially certain to occur.

45. Plaintiffs were harmed as detailed above.

46. Patriot's conduct was a substantial factor in causing plaintiffs' harm.

47. Patriot's conduct was willful and constituted malice, oppression and/or fraud on plaintiffs, under California Civil Code § 3294, entitling plaintiffs to punitive damages in an amount appropriate to punish or set an example of Patriot.

WHEREFORE, plaintiffs pray for relief as set forth below

### FOURTH CLAIM FOR RELIEF
(Fraudulent Transfer of Assets)
Against Patriot

48. Plaintiffs incorporate by reference as though fully set forth herein the allegations in Paragraphs 1 through 47 of this Complaint.

49. The Intercare Defendants transferred the Assets to Patriot without plaintiffs' permission.

50. Plaintiffs' right to payments under the APA arose before the Intercare Defendants transferred the Assets to Patriot.

51. The Intercare Defendants did not receive a reasonably equivalent value in exchange for the Assets.

52. The Intercare Defendants by transferring the Assets to Patriot without also transferring the liabilities to make payments to plaintiffs under the APA: (a) intended to incur debts beyond their ability to pay as they became due; (b) intended to hinder, delay, or defraud plaintiffs; and/or (c) were insolvent at that time or became insolvent as a result of the transfer of the Assets;

53. Plaintiffs were harmed as detailed above.

54. Patriot's conduct was a substantial factor in causing harm to Plaintiff.

55. Patriot's conduct was willful and constituted malice, oppression and/or fraud of plaintiffs, under California Civil Code § 3294, entitling plaintiffs to punitive damages in an amount appropriate to punish or set an example of Patriot.

WHEREFORE, plaintiffs pray for relief as set forth below

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that the Court enter a judgment:

1. That Plaintiff Rigsby be awarded compensatory damages against all Defendants in an amount according to proof that is within the jurisdictional and forum limits of this Court and in the amount of $683,500, or other amount according to proof, plus interest;

2. That Plaintiff Steinmeyer be awarded compensatory damages against all Defendants in an amount according to proof that is within the jurisdictional and forum limits of this Court and in the amount of $278,000, or other amount according to proof, plus interest;

3. A writ of attachment issue in favor of plaintiffs and each of them against the real and personal property of the Intercare Defendants;

4. For Proof of Key Man Insurance on Hamm to secure the remaining payments due plaintiffs;

5. For punitive and exemplary damages, if so authorized by the law and by the findings of fact herein;

6. That the transfer of the Assets from the Intercare Defendants to Patriot be

set aside to the extent necessary to satisfy plaintiffs' claims herein and plaintiffs' reasonable costs and attorneys' fees.

7. That the property in the hands of Patriot be attached in accordance with the provisions of Sections 481.010 through 493.060 of the Code of Civil Procedure.

8. That Patriot and its representatives, attorneys, and agents be restrained from selling, transferring, conveying, or otherwise disposing of the Assets until plaintiffs receive all payments due and owing under the APA.

9. That an order pendente lite be entered in favor of plaintiffs, enjoining and restraining Patriot and its representatives, attorneys, servants, and agents from selling, transferring, conveying, assigning, or otherwise disposing of the Assets.

10. That the judgment herein be declared a lien on the Assets.

11. That an order be made declaring that Patriot holds the Assets in trust for plaintiffs.

12. That Patriot be required to account to plaintiffs for all profits and proceeds earned from or taken in exchange for the Assets.

13. That plaintiffs be awarded their costs in this action including attorney's fees if so allowed by law; and

14. For such other, further or different relief as the Court may deem just and proper under the circumstances.

**JURY TRIAL DEMANDED:**

Plaintiff hereby demands a jury trial.

**COMPLAINT FOR BREACH OF CONTRACT, ALTER EGO LIABILITY, INTENTIONAL INTERFERENCE WITH CONTRACT, AND FRAUDULENT TRANSFER OF ASSETS**

Dated: June 30, 2017

                                KATZOFF & RIGGS, LLP

                                /s/ Robert R. Riggs

By: _____
Robert R. Riggs

Attorneys for Plaintiffs KAREN RIGSBY, Trustee, and DONALD P. STEINMEYER

KATZOFF & RIGGS LLP
1500 PARK AVE., SUITE 300
EMERYVILLE, CA 94608
(510) 597-1990

---

16
**COMPLAINT FOR BREACH OF CONTRACT, ALTER EGO LIABILITY, INTENTIONAL INTERFERENCE WITH CONTRACT, AND FRAUDULENT TRANSFER OF ASSETS**