EXHIBIT "C"

# CONSULTANT AGREEMENT
# DONALD P. STEINMEYER

THIS CONSULTANT AGREEMENT ("Agreement") dated December 31, 2010 between Intercare Specialty Risk Insurance Services, Inc. a California corporation ("ISRIS"), and Donald P. Steinmeyer("Consultant").

## RECITALS

WHEREAS, Consultant is a stockholder, officer, director and key employee of PRM Insurance Services, Inc., a California corporation (the "Acquired Business"), substantially all the goodwill and other assets of which are being acquired by ISRIS in a transaction being completed contemporaneously with this Agreement ("Transaction") pursuant to a Asset Purchase Agreement dated December 31, 2010 by and among ISRIS and PRM Insurance Services, Inc. ("Corporation"), Gene Marsh (in his capacity as "Stockholder" of PRM), and Donald Steinmeyer (in his capacity as a "Stockholder" of PRM (the "Purchase Agreement");

WHEREAS, the parties acknowledge that ISRIS has a legitimate interest in retaining the services of Consultant and the taking of the covenants herein in order to preserve the value of the Acquired Business;

WHEREAS, Consultant is a signatory to the Purchase Agreement, is directly or indirectly setting a material stake in the Acquired Business, including his personal goodwill associated with the Acquired Business, and is substantially and personally benefitting from the Transaction; and

WHEREAS, the execution of this Agreement is a condition to the effectiveness of the aforesaid Transaction.

NOW, THEREFORE, in consideration of the above recitals and the mutual covenants and agreements set forth below, the parties agree:

1

Section 1. <u>Consulting Term</u>.

Consultant agrees to serve as a consultant of ISRIS with the duties set forth in Section 2 for a term (the "Term") beginning on January 1, 2011 and ending on December 31, 2021.

Section 2. <u>Duties.</u>

(a) Consultant will be available to consult with ISRIS upon reasonable notice and request by ISRIS.

(b) Consultant shall not, either during or outside of normal business hours, directly or indirectly, sell, solicit, service or engage in any aspect of the insurance business for or on behalf of any entity other than ISRIS and its subsidiaries, nor engage in any activity inimical to the best interests of ISRIS and its subsidiaries.

Section 3. <u>Compensation During Term</u>.

As the sole compensation for the performance of the services provided by Consultant, Consultant shall be paid one thousand, four hundred and eighty-two ($1,482) per month throughout the Term.

Section 4. <u>Representations</u>.

Consultant represents and warrants that, except as he may be so bound by the terms of this Agreement by the Acquired Business:

(a) Consultant is not, and will not become, a party to any agreement, contract, arrangement or understanding, whether of employment or otherwise, that would in any way restrict or prohibit him from undertaking or performing his duties in accordance with this Agreement or that restricts his ability to be contracted with ISRIS in accordance with this Agreement;

(b) Consultant's consulting with ISRIS will not violate the terms of any policy of any prior employer of Consultant regarding competition; and

(c) His position with ISRIS, as described in this Agreement, will not require him to improperly use any trade secrets or confidential information of any prior employer, or any other person or entity for whom he has performed services.

Section 5. Trade Secrets and Confidential Information.

(a) Consultant acknowledges that ISRIS and its affiliates' business depend to a significant degree upon the possession of information which is not generally known to others, and that the profitability of ISRIS and its affiliates' business requires that this information remain proprietary to ISRIS and, as applicable, its affiliates. Accordingly:

(i) Consultant agrees that all intellectual property, such as computer programs, systems or software, developed during the Term of this Agreement or as a result of the services performed by Consultant in the scope of his duties. To the extent that any such intellectual property is determined not to constitute work for hire, or if any rights in any such intellectual property do not accrue to ISRIS as a work for hire, Consultant's signature on this Agreement constitutes an assignment (without any further consideration) to ISRIS of any and all of his respective copyrights and other rights, title and interest in and to all such intellectual property. ISRIS shall retain all proprietary rights to any and all such intellectual property. Consultant agrees to execute any documents necessary to perfect of ISRIS in such intellectual property upon the request of ISRIS.

(ii.) Consultant has been notified by ISRIS, and understands, that the foregoing provisions of section (i) do not apply to an item of intellectual property for which no equipment, supplies, facilities or trade secret

information of ISRIS or any of its affiliates was used and which was developed entirely on Consultant's own time, unless: (1) the item of intellectual property relates (A) to the business of ISRIS or any of its affiliates or (B) to ISRIS or any of its affiliates' actual or demonstrably anticipated research and development, or (2) the item of intellectual property results from any work performed by Consultant for ISRIS or any of its affiliates.

(b) Consultant recognizes that by virtue of the Transaction and his services to ISRIS, he has had and will be granted otherwise prohibited access to confidential and proprietary data of ISRIS and its affiliates (including of the Acquired Business which is not known either to their competitors or within the insurance agency, consulting and brokerage business generally). This information (hereinafter referred to as "Confidential Information") includes, but is not limited to, data relating to ISRIS and its affiliates' unique marketing and servicing programs, procedures and techniques; retirement plan consulting, variable annuities, and fund investment business and related products and services; business, management and personnel strategies; details of salary, bonus and other compensation arrangements, including those of Consultant, the criteria and formulae used by ISRIS and, as applicable, its affiliates in pricing their respective insurance and benefits products and claims management, loss control and information management services; the structure and pricing of special insurance packages that ISRIS and its affiliates have negotiated with various underwriters; lists of prospects compiled by ISRIS and its affiliates management and research staff; the identity, authority and responsibilities of key contacts at ISRIS accounts and accounts of it affiliates, including accounts of the Acquired Business; the composition and organization of accounts' businesses; the peculiar risks inherent in their operations; highly

sensitive details concerning the structure, conditions and extent of their existing insurance coverages; policy expiration dates; premium amounts; commission rates; risk management service arrangements; loss histories; candidate and placement lists; and other data showing the particularized insurance requirements and preferences of the accounts. Consultant recognizes that this Confidential Information constitutes a valuable property of ISRIS and its affiliates, developed over a long period of time and at substantial expense, and acknowledges the Company's legitimate interest in safeguarding the Confidential Information from disclosure. Accordingly, Consultant agrees that he will not, at any time during the Term or thereafter, directly or indirectly, divulge such Confidential Information or make use of it for his own purposes or the purposes of another.

(c) Upon termination of this Agreement, Consultant shall return to ISRIS all materials and all copies or tangible embodiments of materials, involving Confidential Information, as well as all other property (whether or not constituting or including Confidential Information) of ISRIS and its affiliates, in Consultant's possession or control. Consultant agrees to represent in writing to ISRIS upon termination of this Agreement that he has complied with the provisions of this section.

Section 6.  Protection of ISRIS Business.
In order to protect the goodwill and other assets being acquired in the Transaction as well as the other legitimate interests of ISRIS and its affiliates in, among other things, protecting their Confidential Information and account relationships following the Transaction, Consultant hereby agrees to the following covenants, which Consultant acknowledges and

agrees are reasonably necessary and tailored to protect ISRIS and its affiliates' legitimate business interests:

(a) For a period of ten (10) years after the Closing Date (as defined in the Purchase Agreement), Consultant will not, directly or indirectly, compete in any way with the Acquired Business anywhere within the state of California and within a one hundred (100) mile radius of the location of any client, customer or Prospective Account of the Acquired Business. For the purposes of this section, the term "compete in any way with the Acquired Business" shall mean engaging in or attempting to engage in any business similar to that carried on by the Acquired Business or by ISRIS or any of its affiliates.

(b) For a period equal to the longer of: (i) ten (10) years after the Closing Date, or (ii) two (2) years following the termination of this Agreement with ISRIS or any of its affiliates (as applicable) for any reason whatsoever, Consultant will not, directly or indirectly, solicit, serve, sell to, divert, receive or otherwise handle insurance-related business with any individual, partnership, corporation, association or other entity that: (x) is, or within the last two (2) years preceding the Closing Date was, a client or customer of the Acquired Business or (y) is a Prospective Account (as defined below) of the Acquired Business.

(c) For a period equal to the longer of: (i) ten (10) years after the Closing Date, or (ii) two (2) years following the termination of this Agreement with ISRIS or any of its affiliates ( as applicable) for any reason whatsoever, Consultant will not, directly or indirectly, solicit, place, market, accept, aid, counselor consult in the renewal, discontinuance or replacement of any insurance (including self-insurance) by, or handle self-insurance programs, insurance claims, risk management services or other insurance administrative or service functions for: (x) any account of ISRIS

or any of its affiliates for which the Consultant performed any of the foregoing functions during the two-year period immediately preceding such termination; or (y) any Prospective Account of ISRIS or any of its affiliates. All references to "ISRIS" shall be deemed to include the Acquired Business if an account of ISRIS or any of its affiliates is part of a group of companies which conducts business through more than one entity, division or operating unit, whether or not separately incorporated (a "Client Group"), the term "account of ISRIS or any of its affiliates" as used herein (i) shall include products or services within any entity, division or operating unit of the Client Group where the same management group within the Client Group has the primary decision making authority with respect to contracting for services of the type rendered by ISRIS or any of its affiliates, and (ii) shall not include products or services within any entity, division or operating unit of the Client Group where the management group within the Client Group which has the primary decision making authority with respect to contracting for services of the type rendered by ISRIS or any of its affiliates is not the same as any management group that falls within the preceding clause.

(d) Consultant recognizes that employees of ISRIS and its affiliates are a valuable resource of ISRIS and its affiliates and are integral to their full enjoyment of the goodwill and other assets acquired in the Transaction. Accordingly, for a period equal to the longer of: (i) five (5) years after the Closing Date, or (ii) two (2) years following the termination of this Agreement with ISRIS or its affiliates (as applicable) for any reason whatsoever, Consultant will not, directly or indirectly, solicit, induce or recruit any employee of ISRIS or its affiliates to leave the employ of ISRIS or its affiliates.

(e) For the purposes of the covenants set forth in Sections 5 and 6 of this Agreement:

(i.) The words "directly or indirectly" as they modify a prohibited activity shall include acting as an employee, officer, director, consultant or other agent or representative of any enterprise or person which so acts and includes any direct or indirect participation in or with any such acting enterprise or person as a creditor, owner, lender, partner, limited partner, joint venturer, investor, member or stockholder, except as a stockholder holding less than a one percent (1%) interest in a corporation whose shares are traded on a national securities exchange or quoted on Nasdaq.

(ii.) The term "Prospective Account" of the Acquired Business or of ISRIS or its affiliates, as applicable, means any entity (other than current account of the Acquired Business or of ISRIS or its affiliates, as applicable) with respect to whom, at any time during the one (1) year period preceding the termination of this Agreement, Consultant: (I) submitted or assisted in the submission of a presentation or proposal of any kind on behalf of the Acquired Business, ISRIS or its affiliates, as applicable, or (II) had material contact or acquired or had access to Confidential Information as a result of or in connection with Consultant's duties with the Acquired Business, ISRIS or its affiliates, as applicable.

(f) Consultant agrees that, in the event of a breach of any of the provisions of this section, the time period specified in such provisions shall be extended by the number of days between the date of such breach and the date such breach is enjoined or other relief is granted to ISRIS or any of its affiliates, as applicable, by a court of competent jurisdiction. It is the intention of the parties that ISRIS and its affiliates shall enjoy the faithful

performance by Consultant of the covenants specified in said Section for the full time periods specified therein.

Section 7. <u>Assignment</u>.

Except as provided in section 8, this Agreement shall not be affected by any merger or consolidation or other reorganization of ISRIS and this Agreement shall be binding upon and shall inure to the benefit of the continuing entity or to any successor in interest to ISRIS. This Agreement also shall inure to the benefit of any affiliate of ISRIS as provided in this Agreement. In addition, ISRIS may assign this Agreement to any affiliate corporation of ISRIS, in which event: (i) such affiliate shall be liable to Consultant for all purposes; and (ii) except for purposes of Section 8 hereof, all references to "ISRIS" and all rights of ISRIS shall include and inure to the benefit of such employing affiliate.

This Agreement may not be assigned nor obligations hereunder delegated by Consultant.

Section 8. <u>General</u>.

(a) This Agreement is made in and shall be governed by and construed in accordance with the laws of the State of California, without giving effect to conflict of law principles.

(b) This instrument contains the entire agreement of the parties and supersedes all other prior agreements, understandings, negotiations, correspondence, undertakings and communications of the parties, whether oral or written, relating to the hiring of the Consultant by ISRIS, provided that nothing herein shall supersede, limit or otherwise affect the Purchase Agreement or any of the Consultant's or ISRIS's rights or obligations thereunder.

(c) Subject to Section 8(d) below, this Agreement may not be amended, altered or modified without the prior written consent of both parties, and such instrument shall acknowledge that it is an amendment or modification of this Agreement. Waiver of any term or condition of this Agreement shall not be construed as a waiver of any subsequent breach or failure of the same term or condition, or any other term or condition. Any waiver must be in writing. No amendment, alteration, modification or waiver may be signed by the Consultant on behalf of ISRIS, its assignees, successors or assigns.

(d) To the extent that any of the terms set forth in this Agreement or any word, phrase, clause or sentence is found to be illegal or unenforceable for any reason, such word, phrase, clause or sentence shall be modified or deleted in such manner so as to afford ISRIS and its affiliates the fullest protection commensurate with making this Agreement, as modified, legal and enforceable under applicable laws, and the balance of this Agreement shall not be affected thereby, the balance being construed as severable and independent.

(e) All notices, requests, demands, claims and other communications hereunder shall be given in writing. Any notice request demand, claim, or other communication hereunder shall be deemed duly given (i) when delivered personally to the recipient; (ii) one (1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid); (iii) four (4) business days after being mailed to the recipient by certified or registered mail, return receipt requested, postage prepaid and addressed to the intended recipient as set forth below:

<u>As to Intercare:</u>

Kevin Hamm, President
6970 Destiny Drive
Rocklin, CA 95677

With a copy to:

David Shafer
The Shafer Law Group
210 Magnolia Ave
Auburn, CA 95603

As to Steinmeyer:

P.O. Box 4050
Incline Village, NV 89450
email: dpsteinmeyer@aol.com

With a copy to:

Mark Shusted, Esq.
email: markshusted@gmail.com

Or any other address requested by a party in writing.

(f) This Agreement may be executed in counterparts, each of which shall be deemed an original copy.

(g) In the event that any amounts payable hereunder would subject the Consultant to penalties under Internal Revenue Code section 409A, ISRIS and the Consultant shall cooperate diligently to amend the terms of this Agreement to avoid, insofar as possible, such penalties while minimizing any adverse impact of any such amendment upon the economic, tax or accounting implications to ISRIS.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

"ISRIS"                                           "Consultant"

_____                           _____
Intercare Specialty Risk Insurance Services, Inc.  Donald Steinmeyer
By: Kevin Hamm, President