EXHIBIT "D"

From: Dpsteinmeyer@aol.com
Sent: Saturday, January 17, 2015 10:54 PM
To: Kevin Hamm
Cc: Gene Marsh; markshusted@gmail.com
Subject: 1/15/2015 Phone conversation

Hi Kevin:

Thank you for filling me in on your position relative to the termination of payments to Gene, PRM and myself.

I have had the opportunity to review the issues you raised, as a result of the Patriot audit, with my associates and to review the terms of the APA as they relate to the three issues you identified that triggered the breach. By my commenting as follows, I hope we might short cut the need for some dialog by examining the facts.

1. Administrative Expenses Audit: Nowhere in par 8, page 11 is there a requirement that PRM report expenses to Intercare. The terms actually state that PRM has the discresion to use the funds. It does provide for the expenses to terminate prior to the payment term, if all expenses are satisfied. Factually, all of the funds have not been received as provided and are still due. PRM will advise when the obligations identified are paid. So the termination of these payments prior to determining they are no longer required is a breach.

2. Overpayment of the Broker payables: Paragraph 4b on page 6 requires the establishment of a fund of up to $400,000 to be used to pay broker payables "booked" prior to 12/31/2009. Using round figures this number was determined as follows: In the third quarter of 2010, I performed an audit of the around $900,000 in payables on the PRM books, found that $500,000 of this number consisted of payables that would exceed the statutory collection limit by 10/31/2010 or were with customers no longer doing business with PRM, or both. After reporting this fact to you and Gene and the accountants, the $500,000 was written off. Additionally, it was determined that of the $400,000 remaining, an additional $200,000 would expire on or before 10/31/2011. The result was that was that setting aside $400,000 in the contract was a very safe bet for all parties.

Then in May of 2011, PRM was advised that $350,000 had been charged to the Payable account, which we thought was impossible. Upon receiving the spread sheet detailing the payments, we found that only $12,000 met the requirement of being booked prior to 12/31/2009. You advised me in our conversation, that some $750,000 in broker payments were charged to that account, which in no way could be possible based on ANY accounting we have ever seen that would have met the 12/31/2009 booking requirement in the APA.

3. Settlement Payments to SeaBright: The first annual profit sharing settlement payment was made by Intercare and it was agreed that cost would be split 50 -50 between Intercare and Gene/Don and that was done. The second profit sharing settlement payment was made by Intercare and was fully reimbursed by Gene and Don. There is, therefore, no offset due from Gene and Don.

Kevin, we will be more than happy to look at any data you have that would reveal anything different than what I have outlined above. I believe, however, that we would all be best served by moving forward and finding a way to mitigate the present breach and impending legal costs. We are

1

disappointed for you and for us that the Patriot audit apparently shoved a wedge between us and for our part want to do what we can to facilitate your progress.

Don