UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN RIGSBY, Trustee of the MARSH REVOCABLE TRUST OF 2003, and DONALD P. STEINMEYER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>INTERCARE SPECIALTY RISK INSURANCE SERVS., INC., a California Corporation; ISR HOLDINGS, INC., a California Corporation; KEVIN HAMM, an individual; and PATRIOT NATIONAL, INC., a Florida Corporation,<br><br>Defendants. | No. 2:17-cv-01347-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

By way of their Complaint filed on June 30, 2017, Plaintiffs Karen Rigsby, Trustee of the Marsh Revocable Trust of 2003 ("Rigsby"), and Donald P. Steinmeyer ("Steinmeyer"), sued Defendants Intercare Specialty Risk Insurance Services, Inc., a California corporation ("Intercare"); ISR Holdings, Inc., a California corporation ("ISR"); Kevin Hamm ("Hamm"); and Patriot National, Inc., a Florida corporation ("Patriot"), alleging several causes of action, including breach of contract. Presently before the Court is Plaintiffs' Motion for Right to Attach Order and Writ of Attachment ("Motion"), by

1

which Plaintiffs seek to secure $987,250: the $962,250 that Plaintiffs allege is owed them by Defendants, as well as $25,000 in estimated attorney's fees and costs. ECF No. 7. For the reasons set forth below, Plaintiffs' request is DENIED.[1]

## BACKGROUND[2]

This dispute arises out of the execution of a December 31, 2010, asset purchase agreement ("APA") of PRM Insurance Services, an insurance brokerage firm. Gene Marsh (Rigsby's predecessor-in-interest) and Steinmeyer sold the firm to Defendants. The APA provided for Defendants to make monthly payments of $12,250 to Marsh and $5,500 to Steinmeyer over a period of ten years, ending in December 2020. Defendants made these payments in satisfaction of the APA until July 2015, when the payments decreased and ultimately ceased entirely. Plaintiffs allege that Defendants are liable for the underpaid and remaining balance of payments under the APA. Specifically, Rigsby alleges that Defendants owe the Marsh Revocable Trust at least $684,250, and Steinmeyer alleges that Defendants owe him at least $278,000. These numbers, Plaintiffs allege, represent the amount unpaid since July 2015, and the remaining APA payments through December 2020.

Defendants counterclaimed for, among other things, breach of contract, an accounting, and unjust enrichment. Defendants claim that it is actually Plaintiffs who owe Defendants money due to Plaintiffs' alleged misrepresentations and other wrongdoings related to the APA. Defendants argue that Plaintiffs "ignore" mutually agreed-upon modifications to the APA in their complaint, and that the modifications reduced the payments owed by Defendants. Further, Defendants claim that Plaintiffs

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

[2] Unless otherwise noted, the following recitation of facts is taken from Plaintiffs' Complaint filed in this Court on June 30, 2017, ECF No. 1, and Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion, ECF No. 36.

2

misrepresented and failed to disclose material issues impacting the agreement. For example, the APA included provisions for Defendants to make airplane lease payments to Marsh for as long as he had an airplane available for their use. Defendants allege that Marsh sold his airplane but did not terminate the lease with Defendants or inform them of the sale, so Defendants continued to pay Marsh for the airplane lease past the appropriate date. Defendants allege that they overpaid Marsh $102,000 based on the airplane lease issue alone. Among their other claims, Defendants also allege that Plaintiffs led Defendants to overpay broker commission claims by more than $400,000 above the maximum amount provided in the APA. In sum, Defendants allege that Plaintiffs owe them at least $1,000,000, and that they do not owe Plaintiffs anything.

**STANDARD**

Federal Rule of Civil Procedure 64 codifies the "long-settled federal law providing that in all cases in federal court, whether or not removed from state court, state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered." Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 436 n.10 (1974). Under California law, "[a]ttachment is an ancillary or provisional remedy to aid in the collection of a money demand by seizure of property in advance of trial and judgment." Kemp Bros. Constr., Inc. v. Titan Elec. Corp., 146 Cal. App. 4th 1474, 1476 (2007) (internal quotations omitted) (emphasis in original). "Attachment is a harsh remedy because it causes the defendant to lose control of his property before the plaintiff's claim is adjudicated." Martin v. Aboyan, 148 Cal. App. 3d 826, 831 (1983). The moving party bears the burden to establish that attachment is proper, and "[s]ince California's attachment law is purely statutory, it must be strictly construed." VFS Fin., Inc. v. CHF Express, LLC, 620 F. Supp. 2d 1092, 1095 (C.D. Cal. 2009).

"Generally, an order of attachment may be issued only in an action for a claim of money which is based upon an express or implied contract where the total amount of such claim is a fixed or 'readily ascertainable' amount not less than $500.00." Pos-A-Traction, Inc., v. Kelly-Springfield Tire Co., Div. of Goodyear Tire & Rubber Co., 112 F. Supp. 2d 1178, 1181-82 (C.D. Cal. 2000); Cal. Code Civ. Proc. § 483.010(a). A right to attach order shall issue only if the court finds, among other things, that "[t]he plaintiff has established the probable validity of the claim upon which the attachment is based." Cal. Code Civ. Proc. § 484.090(a)(2). "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." Id., § 481.190.

## ANALYSIS

Plaintiffs contend that their claim is one in which an attachment may issue under Code Civ. Pro. § 483.010 because Plaintiffs' claim is for money based upon a commercial contract, the APA, and such claim is for an allegedly fixed or readily ascertainable amount: $987,250. On the record before the Court, however, Plaintiffs have not met their burden of establishing that attachment is proper in this case.

Although an attachment may be appropriate when a party can prove readily ascertainable damages "by reference to the contract and [if] the basis of the computation appears to be reasonable and definite…. [T]he contract sued upon must furnish a standard by which the amount due may be clearly ascertained and there must exist a basis upon which the damages can be determined by proof." Lewis v. Steifel, 98 Cal. App. 2d 648, 650 (1950) (quoting Force v. Hart, 205 Cal. 670, 673 (1928)). A preliminary issue with Plaintiffs' motion for attachment is that the APA itself, upon which Plaintiffs base their calculations, provides no basis for such accelerated future payments as Plaintiffs request. Further, Defendants contest the substance of most, if not all, of Plaintiffs' claims.

Indeed, Defendants' counterclaims challenge the very foundation upon which Plaintiffs base their attachment request. The parties dispute which of them owes the other any amount of money. For example, as indicated previously, Plaintiffs claim the full, original amount of APA payments through the end of the agreement in December 2020, but Defendants contend Plaintiffs are ignoring mutually agreed-upon modifications to the APA that lowered the amount of those payments. Plaintiffs likewise ignore, according to Defendants, the effect of their failure to inform Defendants of the termination of the airplane lease, which resulted in Defendants overpaying Plaintiffs in the alleged amount of $102,000.

In conclusion, there is simply too much at issue in this case for Plaintiffs to have shown that the amount of the attachment is "fixed" or "readily ascertainable," particularly given the strict construction required for attachment claims. See Dongalen Enter., Inc. v. Metal Framing Enter., LLC, 2016 WL 8539787, at *1 (E.D. Cal. May 27, 2016). A writ of attachment is not appropriate in this case.[3]

## CONCLUSION

Plaintiffs' Motion for Right to Attach Order and Writ of Attachment, ECF No. 7, as well as their Motion to Supplement Application, ECF No. 67, are DENIED.

IT IS SO ORDERED.

Dated: February 26, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiffs also filed a Motion to Supplement Application for Right to Attach Order, ECF No. 67, which is opposed by Defendants, ECF No. 76. Plaintiffs replied to Defendants' Opposition. ECF No. 79. Plaintiffs' Motion to Supplement seeks to broaden the scope of property that may be attached pursuant to their request. Specifically, Plaintiffs wish to include "up to $1,000,000" of a payout payment due January 2018 that Defendants allegedly owe another entity, Phoenix Risk Management, Inc. ECF No. 68 at 2. Plaintiff's Motion to Supplement does not change the Court's conclusion that Plaintiffs have failed to meet their burden of showing that the amount of attachment is "fixed" or "readily ascertainable." Therefore, Plaintiffs' Motion to Supplement Application for Right to Attach Order, ECF No. 67, is DENIED.